CASSIE HAGGERTY, by next friend *vs.* CITY OF LEWISTON.

Androscoggin.    Opinion July 24, 1901.

*Way.   Defect.   R. S., c. 18.*

At the point in the sidewalk, where the plaintiff tripped and fell, a broad and shallow gutter had been constructed across the walk to carry off the water from the conductor on the front of the building, and there was testimony which might have authorized the jury to find that the row of bricks, on one side of the gutter, was from three-fourths of an inch to an inch higher than the corresponding course on the other side.  The bricks constituting the walk, on one side of the gutter, had been re-laid a few weeks before the accident by skilled workmen of large experience in laying brick and building sidewalks, and the condition alleged to constitute the defect was thus a structural one.

*Held;* that such a slight inequality in the surface of the brick sidewalk in question, cannot consistently be declared a defect, but that it should be held to be reasonably safe and convenient, and that the plaintiff's injury was the result of a simple and most unfortunate accident.

On motion by defendant.    Motion sustained.

Action for damages sustained by an alleged defective way in the city of Lewiston.

The case is stated in the opinion.

*Joel Bean, Jr.,* for plaintiff.

*J. L. Reade,* city solicitor, for defendant.

SITTING:   WISWELL,   C. J.,   EMERY,   WHITEHOUSE,   STROUT, FOGLER,  JJ.

WHITEHOUSE, J.   About seven o'clock, on the evening of October 15, 1899, the plaintiff, a girl fourteen years of age, who had previously suffered amputation of one leg, was walking on crutches

on the sidewalk of Lisbon street, and sustained a fracture of the other leg by tripping against a course of bricks alleged to have been so laid as to constitute a defect in the walk. In the action brought to recover damages for this injury, she recovered a verdict of $600, and the case comes to this court on a motion to set aside the verdict as against the evidence.

It appears from the evidence that, at the point where the plaintiff tripped and fell, a broad and shallow gutter had been constructed across the sidewalk to carry off the water from the conductor on the front of the building, and there was testimony which might have authorized the jury to find that the row of bricks, on one side of the gutter, was from three-fourths of an inch to an inch higher than the corresponding course on the other side. The condition may be illustrated by a transverse section of the gutter with the bricks elevated at "A" three-fourths of an inch or an inch, thus:

It is contended, in behalf of the plaintiff, that while this might be deemed a reasonably safe, and convenient sidewalk for a cross-street in a small country village, it should be held defective and unsafe for the sidewalk of the principal business street of a populous city.

It was in evidence that the gutter formation in question, consisting of brick laid in cement, had existed for a long time prior to the accident, but that the bricks constituting the walk, on one side of the gutter, had been re-laid three or four weeks before the accident without disturbing the gutter itself, and that the row of new bricks laid on that side of the gutter were designedly left elevated about half an inch above the edge of the gutter, in the expectation that they would settle to a level with it. As already stated, there was also evidence tending to show that this row of newly-laid bricks was three-fourths of an inch or an inch higher than the old bricks on the other side of the gutter.

Thus, the condition of the walk alleged to constitute the defect was a structural one, and if it was a defect, it was the result of an error of judgment, and not of neglect to repair. This work of

re-laying the bricks, immediately before the accident, appears to have been done by skilled workmen of large experience in laying brick and building sidewalks; and they testified that the gutter was in the usual condition for such a walk, and the bricks on either side of it laid in the usual manner.

It is earnestly contended, in behalf of the defendant, that such a condition of the sidewalk was reasonably safe and convenient for any street, and that it cannot consistently be held defective within the meaning of our statute.

In *Witham* v. *Portland*, 72 Maine, 539, it was held by this court that a depression in the sidewalk six and one-half inches below the surface of the walk and eight and one-half inches in width from a basement window, about one-half of which was within the limits of the walk, was not a defect.

In *Morgan* v. *Lewiston*, 91 Maine, 566, the sidewalks at the junction of Main and Park streets were not on the same level. The Main street walk was of brick with a plank at the outside of the walk at the junction, and set upon edge with the top of the plank flush with the surface of the walk. The Park street sidewalk upon one side, and in the middle, was from one to two inches lower than the Main street walk, and upon the extreme outside the Park street walk was five and one-half inches lower than the top of the plank. Two feet in from this extreme outside the difference in level was but two and three-fourths inches. It was held, that the condition of the walks thus described did not constitute a defect within the meaning of the highway statute. The decision in this case was doubtless influenced somewhat by the fact that the alleged defect was at the junction of two streets.

In *Raymond* v. *Lowell*, 6 Cush. 524, the plaintiff had been injured by stumbling over a grate raised one or two inches above the sidewalk, but it was held that the sidewalk was not defective. The observations of the court in the opinion are pertinent here: "There is probably not a single street in any city in the commonwealth, where there are not substances against which persons would be quite as likely to stumble, as against this inch or two of grate, upon the side of the sidewalk. There is an abundance of

such stumbling blocks all along the streets and sidewalks in Boston. Where there are brick sidewalks, it may be seen by anyone passing along, that the bricks have frequently settled, so that the edgestones, for a large part of the length of the streets, rise quite as much above the traveled part of the sidewalks, as did the grate in this case, and are quite as dangerous. Besides, it may be seen all along our streets, directly in the midst of the traveled part of the sidewalk, that the stone gutters, and the stones around the wood and coal-holes and other objects, rise above the level of the sidewalk full as high, and endanger persons passing quite as much, and probably much more, than was done by this grate. If towns and cities are bound to remove all such things, then they are exposed to indictments for the existence of them. But it can hardly be believed that there ever was, or ever will be an indictment, in such a case, and for such a thing. There would be no end to prosecutions if such a thing should be regarded as furnishing sufficient ground for an indictment."

It is accordingly the opinion of the court, in the case at bar, that the sidewalk in question cannot consistently be declared defective, but that it should be held to be reasonably safe and convenient, and that the plaintiff's injury was the result of a simple and most unfortunate accident.

*Motion sustained.*